Re Gevo, Inc. Mr. Smith, when you're ready. May it please the Court. Good morning, Your Honor. Stephen Smith on behalf of the appellant Gevo. Gevo is appealing the Board's determination that Claim 1 and Claim 27 were obvious. And specifically, whether Step 3, which is in Claim 1, and there's a corresponding element in Claim 27, was obvious. And Claim 3, just for point of reference, Step 3, excuse me, has to do with recycling water, the water-rich liquid phase, from a decanter to a fermentation unit. And the Board found that was obvious. Mr. Smith, this is pretty old stuff. The list of citations is very extensive. The prior op discloses fermentation for ethanol and notes butanol. The difference between normal butanol and isobutanol is rather minor. And De Mori talks about isobutanol and there's recycling here, and there are limited opportunities for recycling. This is really old stuff. And the Patent Office did a thorough job, and why shouldn't that be it? Well, Your Honor, you raise good points. There's two major issues here, and that is how far can you press KSR illegally, and what facts do you need for the record to underpin that determination? And as Your Honor noted, this is decades-old techniques. On the one hand, you have processes for ethanol that were around in the 1960s. Ethanol being a homogeneous azeotrope, meaning you can distill it and burn it off and purify it. And what the Board did was take English and Mayarela on one side, and they kludged it together with a technique that was disclosed, Figure 2, in De Mori that had been around for decades as well. That's in A1136. And that's my point. No one had put these together before, Your Honor, in this combination. And when we did have, when the Board put together the combination of these decades-old techniques, what happened? There was a missing element. And so how did the Board plug that hole? And that's really the issue. But what was unexpected? Were there unexpected results, superior results that weren't expected? Well, Your Honor, no one else had done this before in either line of art in this combination before. And what the Board said was it would have been obvious because it would have been a finite number of options, as Your Honor observed. And the fermenter is one of those viable options. And I think the solicitor's brief really crystallized the Board's decision-making here. They said it was a routine design choice. But, Your Honor, to answer your question, it's not a routine design choice. It never existed before in the decades-old art. It's not what a person of ordinary skill brings to the issue in the proverbial toolbox because it never existed. And so why is that important? Well, when the Board put together this combination, Your Honor, what was the identified problem? And the Board identifies that A58-59. They say it's water recycle. And this kluge together, ethanol-isobutanol combination. That's what they say it is. But the Board never addresses whether the combination meets that need. And it does. It's undisputed. Why? Because there's not one recycle in the combination but two. Two recycle streams, Your Honor. One going from the decanter to the distillation column. The other going from the distillation column to the fermenter. Two streams, directly and indirectly, going to the fermenter. The Board never addressed that issue. Instead, they jumped right over and said, in essence, we're going to modify the solution. You already have the solution you're looking for. Kluging together decades-old art from disparate ethanol and isobutanol. Put those together. What is the need that's person of ordinary skill, at the time, is looking for, prospectively? Not through the hindsight or the prism of our claims. But at that time, what are they trying to do? Trying to solve water recycle. What does the combination of these disparate elements do? It solves it. And so why are we taking the next step, Your Honor? And this is the issue for this Court, I think, as we struggle with IPRs in the Bar and clients. At what point, how far can we push KSR as a design choice? And what does the record need to be to support that? And here, we've solved the issue. And now we're going to modify the solution by just invoking design choice. That it's a routine design choice. Well, we know it's not routine. But, Your Honor, is it a design choice? Well, this Court, just in the last two weeks, had a data point that I think is very instructive. And this is the Cutsforth decision. Non-precedential opinion came out January 22nd. And there, the issue was a combination of mechanical art for a mounting block. And the jurisprudential concerns in that case are squirrelly at issue here. And that is, the issue was, where can I put this spring on a mounting block? And the board said it would have been obvious to put the spring pursuant to what the claim said. Why? Because you could. But, there's no impediment to putting the spring in that particular place. It would have been an obvious design choice. And this Court reversed and said, merely saying the placement of an element is a design choice doesn't equate with obviousness. And that's what we have here. Old art, pooched together in a way no one did before. We solve the issue that the board is saying needs to be addressed by a person of ordinary skill with that combination. And then, we plug this hole, this missing element by merely saying it's a design choice. And so, I submit to your Honor, this is a key case for the Bar, and for clients and patentees, because patenting is, by nature, incremental. And so, patentees, patent owners, stand, obviously, on the shoulders of other inventors. And it's incremental patenting. So, if the board can go back 5 and 10 years later and say, well, we know these are a combination of art, and then this missing element, which was inventive, according to the office when they issued the patent, is now an obvious design choice, the question becomes, how far can we take that? And what is going to be the record here? The record here was just simply, your Honor, we have a generic need for water recycling, and therefore, this would have been an obvious design choice. Because there's a less than infinite number of possibilities. That's really what we have. There's no rigor to the analysis, if you look at A58 and 59, about why they never address the combination solving the issue. They never address why this would be a simple design choice other than there's just a generic need. And the next case before you, Your Honors, may be there's a generic need to save energy. Or there's a generic need to make it ship faster. And so the question here is, what is the line for KSR to be pushed in the direction of a design choice? And what facts does the patent office have to come forth to give, Your Honors, a meaningful, thorough review? There isn't necessarily a rule here. There is a bunch of prior art, a lot of very close prior art, and the only difference is that there isn't an exact disclosure of returning water to the fermentation mix with isobutanol, right? I mean, maybe it's not 102, but this is an obvious misrejection. It is an obvious misrejection, Your Honor, but I point back to where I started. It is decades old art. And as Your Honor knows, they're disparate. What you're saying is that since it hasn't been done in this old art, therefore it was non-obvious. No, no, I'm not saying that at all, Your Honor. But that is certainly a factor. If this has been around for so many decades, why hasn't it been done before, right? That's certainly one criteria. That is not the sole criteria. I'm not arguing that at all. But it gives you the context to look at this record to say, well, wait a minute. We're kludging together two disparate systems, albeit systems that have been around for decades. In a way, no one's put together before. And we're doing it to recycle water. And then we solve the issue. So what line would you draw on Judge Lurie's question as to where, on what side of the line of obviousness, what line would you draw in this context besides saying that it hasn't been done before? What I would draw the line, Your Honors, and I think that is precisely the need for this case, is to say, if you're going to invoke design choice, patent office, in the child court, be clear, be concise, and go through in methodical fashion and give this court some meaningful review. And the line would be, give me detailed facts. For example, in this case, if there was a detailed factual record where the board went through and said, this expert said, you would have done this, you would have moved this pipe, you would have made these choices, and you would have done it for these five different reasons, and we attacked those down below and lost, we'd be in the land of substantial evidence and we'd have a hard road to... So are you saying that they just didn't explain themselves? And if they had, then that would end it? Well, I'm saying, one, Your Honor, they didn't explain themselves. Two, I don't think the record is sufficient to support that they could do that in any sense. And again, I go back to the Cutsforth decision. This is very similar, just came out about two weeks ago. And the court said there, just because you can combine mechanical elements, old elements, and say something, a placement of an element is a design choice, doesn't make it obvious. You need to put some rigor into your opinions. If this were a district court case, I have no doubt that this court would reverse, because we're used to seeing detailed records of findings and some judgment motions and the like. Here, when you look at A58 and 59, it's one paragraph, and it just... You could see the hindsight stream, if you will, no pun intended, looking at this, saying, of course it would have been obvious in hindsight to do this as a design choice, Your Honor. And so I guess what I'm submitting to you, this is a long way of answering your question, Your Honor, there needs to be a line on KSR legally what constitutes a design choice. And factually, if you're going to invoke design choice to fill in the gap, you need to do so in a detailed fashion with facts to support it. The words design choice are not in Section 103. Right. 103 directs us to look at the prior art from the standpoint of one of skill in the art. And whether you call it design choice or not, this prior art is there, and there's a very small incremental difference which has not been shown to produce anything unexpected and beneficial. Right, Your Honor. So to answer your question in a couple of different layers. The Section 103, of course, does not have the words design choice in it. But it has been the shorthand that we see, and Your Honor see, coming from the board, the trial board, and plugging holes via KSR. It's KSR citation in a conclusion that this would have been an obvious design choice. That's what we see. And so that's what I'm reacting to. Not necessarily a statutory basis, but how that statute's being applied through the prism of KSR. And KSR, I would submit, Your Honor, is being stretched too far and too fast without a factual basis. And so that's exactly what happened here, is they invoke a design choice. That this was a routine design choice, despite the fact that it never existed. And why should we depart from a solution that already was, that we solved the problem we set out for. And we're all supposed to go back, and the board's supposed to go back to 2007 as a person of ordinary skill. And at that time, what am I faced with? I am faced with this issue of water recycle, and I'm kluging together this R, and at the end I'm missing an element. But why am I getting to that missing element when I've solved the issue, and if the board's going to get to that missing element, tell us why, other than just the conclusion. It's just a naked conclusion, Your Honor, of it's generic water recycling, and it's a finite number of places. Does the board use the terms design choice? They say, Your Honor, there's a finite number of places to say this is A-59. In other words, that's your language. I'm taking the solicitor's words. When they characterize the board's findings, Your Honor, and analysis, they use the words routine design choice, and I think that's on pages 16 and 18 of the board's opinion. But they use those words. But did the board itself say routine design choice, Your Honor? No, they did not say routine design choice. But I think it's a fair reading from their statement. That's what they're talking about. Someone skilled in the art would have had... My point is you're sort of elevating those words to be a legal standard, and I'm challenging that, questioning that. I appreciate that, Your Honor. I didn't think I was... I wasn't trying to elevate it. I'm just trying to highlight, but I think this language that the board used is synonymous with a design choice. This is a viable alternative. You could have done it this way. Well, we know we could do it that way because we did it, but no one did it before, and there's a finite number of options. In essence, a design choice. Did they call it that by name? No. You're willing... I'm sorry, go ahead. No, they say it teaches or suggests recycling the water-rich phase. So that really is more than just a choice of undefined design changes, is it not? They actually say teaches or suggests. But I gather your argument is nonetheless that they have to point to the teaching or suggestion. Is that right? That's exactly right. Particularly, and I know I've been saying this a bunch, but particularly when you put that combination together of DeMoria on one side and the ethanol art on the other side, you have two recycle streams. You satisfy that issue. And so if you're going to depart from the solution, if you're going to modify that solution, articulate why, other than just the circular reasoning that there's a generic recycle stream. We want to generically save water. There needs to be more rigor to these opinions. Okay, you've exhausted your rebuttal. We'll give you, restore two minutes, and let's hear from Mr. Helm. Thank you, Your Honor. May it please the Court. This appeal comes in the context of an inter-parties review. There were two parties involved. Can you just skip to, just because it's on at least my brain, I mean, your friend, as you heard, rests heavily on this design choice issue, and he is correct that there was a recent opinion in Cusworth that kind of pushed the Board back on its use. I assume that you're going to tell us that this case is distinguishable from that case in terms of whatever design choice issue was here. So could you address that? Absolutely, Your Honor. So in this case, there's a disclosure in the prior art explaining why you would make this particular design choice, that is, the English reference, which says you would send the water back to the fermentation unit in order to maintain a water balance. There's testimony from an expert by declaration and deposition that says that this is, there are a very small number of choices of places where you would send this water, and that's what the Board based its finding on. So that is substantial evidence supporting the finding that it's design choice number one. But where does the teacher suggest sending it to the fermenter? That's in the English reference. And if I may, just turn to that page. So on A175, this is the English prior art reference, which discusses this ethanol distillation facility. And I think it's actually important because the claims are directed to retrofitting an ethanol plant. But it doesn't take the water-rich phase. Well, in the ethanol, of course, when you distill ethanol, you don't end up with a two, a biphasic result in distilling. So you end up with just one phase. And the teaching at the Board... Well, but that's exactly the issue, isn't it? That these people didn't do exactly that. They adapted. After years or decades of this kind of technology, they made a change which apparently is quite suitable since it seems to have been copied. Well, as far as I know, Your Honor, there's absolutely no evidence of any secondary considerations in the record, not of copying or of commercial success or any of those things. I may be wrong, but I don't believe that there's anything that was cited for secondary considerations to explain why this change would be non-obvious. Well, if it's not being used, why would anyone go through all of this expensive procedure? Your Honor, I cannot speak at all to that. I literally have no idea because I was not... We are involved in making the decision below, but the reason why we're participating in this appeal is because one of the parts dropped out, and so we're defending the Board's decision here. So I don't know. But as far as I know, there's no evidence of that in the record. But just to get back to the motivation to recycle it back to the fermentation unit as opposed to recycling it back to other places within the system. And there are... The De Mori art does say you can recycle the water back. It says you can put the water back into the system at a column. The English prior art talks about wanting, as a further object of the invention, to provide a process in which a relatively smaller volume of water has to be discarded. That's A175, column 1, lines 53 to 56. And then on the next page, A176, it says, in order to avoid the need to dilute the feedstock to a standard concentration, they recycle the water back to the system. And that's column 4, lines 13 through 25. But there's... This is the prior art process that also says, this reference says it's suitable for the production of butanol, which, as Judge Lurie alluded to, is very similar, has similar properties to isobutanol. And so the Board looked at this and then looked at the testimony of the expert, by declaration and by the deposition, and said, yes, this would be a design choice. That's the expert's conclusion. We're looking for the evidence. Well, the expert... In the documentary evidence. I think I pointed you to where this is the expert's... The evidence that this was a place where people recycled water to. And then I believe the expert's testimony is further evidence of that fact. It's not the ultimate conclusion, because that would be obvious to make that change. But he was saying that in his experience, in his experience that looking at this type of system, this is at page A1748, he says that you would take water and recycle it into the system. And the question is, where would that be recycled? There are many opportunities for water recycle in biofuel plants. So it could be recycled to the fermenter. It could be recycled to the feedstock separation. And so his testimony is that these are the places... Excuse me, that you would recycle water to in this type of system. So is the only difference between these claims and DeMaury, the location of the water recycling in an isobutanol process to the beer column rather than to the fermentation mix? That is correct. And I think it may be even more so with respect to the English reference, is that after the distillation in English, this kind of continuous distillation where you take and distill a portion of the fermentation media to make sure that you don't have too much of the produced molecule that goes back and inhibits the yeast that's producing it. So taking and distilling away the molecule of interest kind of continuously, what do you do after that distillation? And in the case of English, you don't end up with a simple biophasic system. You end up with a homogeneous system, which you have to then use other techniques to get to higher purity. But here, what we learned from DeMaury, and certainly anyone of skill in the art would have been able to tell you, in a biophasic system, in easy separation, is to simply decant the layer that you want, and then the question, the only question is, what do you do with that bottom layer? And DeMaury says, put it back into the system. And it says, what DeMaury says is, put it back in at the beer column, which is a distillation column. And all the board found, all the expert testified to, and what the board found was that there are other places to put it back in, as evidenced by the expert's testimony, as well as the English reference. There's other places to return water into the system. Presumably there aren't many places. That's what the board found, is that there's a small number of places for it to be returned to the system. And I believe that's at page 859. They agreed there are a finite number of places to send the water to the liquid phase, and the fermenter is a viable option. That was the board's finding at that point. And then the citation to KSR. And again, the KSR here is, the citation of what KSR says is that where there's a design need, and here the identified design need by the board was the need to recycle water into the system. And English further expounds upon that, is that you need to return it to the fermenter to maintain the water balance in the fermenter. Because if you imagine, if you're constantly taking water out of the fermenter, it dries up eventually. So that's the design need here. And so whether or not, there's a lot of, I think it may be of interest that much of what is relied upon in the appeal by the pine owner is trying to undermine the testimony of the decorator. There's not much positive evidence that this is an unobvious invention. There's not much cited in that regard. And what the board did was, in its opinion, there's a couple of different theories that the board discredits or undermines based upon the deposition testimony of both experts. These theories that the board rejects, for example, that returning this to the fermenter would somehow create a toxicity in the fermenter because there's a small amount of isobutanol. And the board made findings that said, no, both experts agree. Once you put it back into the fermenter, there's no toxicity issue. That's the type of thing that you might expect, the type of evidence you might expect if it wasn't obvious, the type of evidence you might want them to see to establish that this invention is unobvious. But there's none of that type of evidence here. So if there's no further questions. Thank you. Thank you, Your Honors. Thank you, Your Honors. I was struck by what counsel said, that there's no positive evidence. But the board has the initial burden to show as a prima facie case of obviousness. And that's the question we have. That's the legal error. And let me address some points very quickly. So English already addressed water recycle. It did so from, again, the distillation column to the fermenter. That's undisputed. We've taken English, we've taken an isobutanol reference, and we put those together. And it already solves the issue, and counsel really framed the issue, of water recycle in the system. Those two combinations do that. There's no dispute about that. And they both run directly and indirectly to the fermentation unit. So the nub of the issue is, how much are we going to allow the board to make that leap to say, it would have just been an obvious design choice or routine option, whatever words you want to use, to move this fermentation, excuse me, this recycle stream from the decanter to the fermentation unit when no one's done it before. And this is disparate art, and we've already solved the issue. And then finally, I thought it was interesting, Your Honors, about their expert. And, Your Honor, you hit the nail on the head. The expert said, sure, you can recycle water there. That's not disputed. We've done that. We've shown that. The patent owner has shown that. But why would you put the water there? Oh, there's a finite number of options. Well, is that the standard, that you could, in retrospect, and it's a finite number of options? And that's what I was saying before, Your Honors. This is what a case would be. Another data point cuts forth of how far is KSR going to be allowed to be applied from a legal standpoint. And if you're going to apply it on the nebulous reaches, what are you going to need to support that factually? And with that, Your Honors, I will sit down and thank you for your time. Thank you. We thank both counsel. Your case is submitted.